BETSY C. MANIFOLD (182450)
manifold@whafh.com
RACHELE R. RICKERT (190634)
rickert@whafh.com
BRITTANY N. DEJONG (258766)
dejong@whafh.com
**WOLF HALDENSTEIN ADLER
   FREEMAN & HERZ LLP**
750 B Street, Suite 2770
San Diego, CA 92101
Telephone:  619/239-4599
Facsimile: 619/234-4599

**LEVI & KORSINSKY, LLP**
NANCY A. KULESA
nkulesa@zlk.com
STEPHANIE A. BARTONE
sbartone@zlk.com
733 Summer Street, Suite 304
Stamford, CT 06901

*Counsel for Plaintiffs and the Class*

[Additional Counsel listed on Signature Page]

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| JULIE SANCHEZ and TIFFANIE WOODARD, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE HONEST COMPANY, INC. and JESSICA WARREN a/k/a JESSICA ALBA,<br><br>Defendants. | Case No.<br>**COMPLAINT FOR VIOLATIONS OF: (1) CALIFORNIA CONSUMERS LEGAL REMEDIES ACT CAL. CIVIL CODE §§ 1750,** *et seq.***; (2) UNLAWFUL, FRAUDULENT & UNFAIR BUSINESS PRACTICES CAL. BUS. & PROF. CODE §§ 17200,** *et seq.***; (3) CALIFORNIA FALSE ADVERTISING LAW CAL. BUS. & PROF. CODE §§ 17500** *et seq.***; (4) ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT 815 ILCS 505/1** *et seq.***; (5) BREACH OF EXPRESS WARRANTY; (6) UNJUST ENRICHMENT**<br><br>**CLASS ACTION**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Julie Sanchez ("Plaintiff Sanchez"), and Tiffanie Woodard ("Plaintiff Woodard") (collectively, "Plaintiffs") by and through their undersigned attorneys, bring this action on behalf of themselves and all others similarly situated, based upon personal knowledge as to themselves and on information and belief as to all other matters, against defendants, The Honest Company, Inc. ("Honest" or the "Company") and Jessica Warren a/k/a Alba ("Alba") (collectively, "Defendants"), and allege as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d). The aggregated claims of the individual Class members exceed the sum or value of $5,000,000, exclusive of interests and costs.

2.      This Court has personal jurisdiction over Defendants because Defendants are residents of the State of California and have purposefully availed themselves of the privilege of conducting business in the State of California.

3.      Venue is proper in this District under 28 U.S.C. § 1391(a) because many of the acts and transactions giving rise to this action occurred in this judicial district and because Defendants:

> a.      have intentionally availed themselves of the laws and markets within this district through the promotion, marketing, distribution and sale of their products in this district;
>
> b.      do substantial business in this district, including maintaining the Company's principal place of business in this district; and
>
> c.      are subject to personal jurisdiction in this district.

## NATURE OF THE ACTION

4.      Defendant Honest is a consumer goods company that sells purportedly eco-friendly baby diapers, wipes, bath and body care products along with supposedly non-toxic cleaning products. The Company was founded in 2011 by actress Alba and Christopher Gavigan and was valued at $1.7 billion in 2015.

5.     This action concerns three products that are marketed, distributed, and sold by Honest: Honest Laundry Detergent, Honest Dish Soap, and Honest Multi-Surface Cleaner. Honest broadly advertises its mission to produce and sell products that are natural and free of harmful chemicals. Specifically, the Company represents to the public that its products do not contain sodium lauryl sulfate ("SLS"), a known skin irritant, by stating that they are "Honestly free of SLS" on the product labels, Internet blog posts, the Honest website, third party websites, and via social media such as Instagram and Twitter. However, as shown below, the three Honest products in question do contain a significant amount of SLS. In fact, in testing one of the products, the Honest Laundry Detergent, the Wall Street Journal reported on March 10, 2016 that the product contained SLS, shown by two laboratory tests commissioned by the newspaper.

6.     Honest has touted its lack of SLS in the products as a way to distinguish the Company's products as safer than its competitors' products such as those sold by P&G, Colgate-Palmolive, and Seventh Generation Inc.

7.     SLS is an inexpensive and effective foaming and emulsifying agent found in soaps, shampoos, toothpaste and other personal care products. Like many other detergents, SLS is a known irritant affecting skin, eyes, and lungs. Alba herself has referred to SLS as a "toxin" that should be avoided in her 2013 book "The Honest Life."

8.     To dispel the notion that its products contain SLS, Honest has misleadingly stated that they instead contain Sodium **Coco** Sulfate ("SCS"), as a safer and less irritating alternative to SLS. However, SCS is a mixture of various cleaning agents that includes a significant amount of SLS. SCS is also a known potential skin irritant.

9.     Honest outsources its manufacturing of laundry detergent to Earth Friendly Products LLC ("Earth Friendly"), a California company that also makes and sells detergent and other cleaning products under its own brand, Ecos.

10.   Earth Friendly, in turn, sources its chemicals from a company called Trichromatic West Inc. ("Trichromatic"), which imports them from a company called Galaxy Surfactants Ltd., which labels the chemical as SLS, not SCS.

11.   In fact, Earth Friendly removed claims that its products do not contain SLS in April 2015.

12.   Despite Defendants' marketing campaign that boasts their products to be "Honestly free of" or "Honestly made without" SLS, Defendants' products are actually laden with the chemical.

13.   By stating their products contain SCS instead of SLS, Honest is deceiving its customers by representing that they can avoid SLS by using Honest products, and charging a premium for the purportedly "safer" products.

14.   Defendants have employed numerous methods to convey to consumers throughout the United States their deceptive, false and misleading message about their products, including their packaging, product inserts, communications with their customers via third party websites and social media, and their Company website through which they sell their products directly to the public.

15.   As a result of Defendants' deceptive, false and misleading claims in their advertising, consumers – including Plaintiffs and the other members of the proposed class – have purchased Defendants' products without being advised that they contain SLS.  Had Defendants disclosed these material facts, Plaintiffs would not have purchased Defendants' products.  Defendants were able to charge more than what their products would have been worth had they disclosed the truth about them.

16.   Plaintiffs bring this class action against Defendants, on behalf of themselves, the proposed classes, and the general public, in order to: (a) halt the dissemination of Defendants' deceptive advertising message; (b) correct the false and misleading perception Defendants have created in the minds of consumers through their representations and omissions; and (c) secure redress for consumers

who have purchased one or more of Defendants' products.  Plaintiffs, on behalf of themselves and the proposed Class, allege violations of California Business & Professions Code §§ 17200, *et seq.* ("UCL"), the Consumers Legal Remedies Act, California Civil Code §§ 1750, *et seq.* ("CLRA"), California's false advertising law, California Business & Professions Code §§ 17500, *et seq.* ("FAL"), Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.* ("ICLA"), breach of express warranty, and unjust enrichment.

## PARTIES

17.  Plaintiff Julie Sanchez is an individual who resides in Clovis, California and who is a citizen of California.  Ms. Sanchez purchased Honest products because of the Company's guarantee that they were free of harsh chemicals, were natural, and after reading about Honest and its commitment to never use toxic materials in its products.  Specifically, Ms. Sanchez began purchasing all three Honest products in 2013.  Ms. Sanchez initially purchased the three Honest products through a trial offer through which she received shipments directly through Honest.  In approximately 2014, Ms. Sanchez began purchasing the three Honest products from Target.  Ms. Sanchez stopped buying all three Honest products in or around mid-2015.

18.  Plaintiff Tiffanie Woodard is an individual who resides in Rockford, Illinois and who is a citizen of Illinois.  Ms. Woodard purchased Honest products because of the Company's guarantee that they would be SLS-free, and after reading about Honest and its commitment to never use toxic materials, including SLS, in its products.  Specifically, on January 10, 2015 Ms. Woodward received a sample of Honest's Multi-Surface Cleaner.  On May 1, 2015, Ms. Woodard first purchased Honest's Multi-Surface Cleaner through Honest's online subscription plan.  In or around September of 2015, Ms. Woodard began purchasing Honest's Multi-Surface Cleaner at Target.  Ms. Woodard purchased Honest's Multi-Surface Cleaner a total of approximately three times.  On May 1, 2015, Ms. Woodard

began purchasing Honest's Laundry Detergent through Honest's online subscription plan.  In or around September of 2015, Ms. Woodard began purchasing Honest Laundry Detergent at Target.  Ms. Woodard purchased Honest's Laundry Detergent on a regular basis during this time.  During this time period, Ms. Woodard also purchased Honest's Dish Soap one or two times from Target.  Ms. Woodard stopped purchasing all three of Honest's products upon learning that they contained SLS.

19.  Based on Honest's representations that its products were SLS-free, Plaintiffs paid a premium for the products over and above comparable products sold by Honest's competitors that did not claim to be SLS-free. Instead of receiving products free of SLS, Plaintiffs received products that contained SLS.

20.  Honest is incorporated in Delaware, and has its corporate headquarters at Playa Vista, California. Honest markets and sells a variety of consumer care products, both online and in numerous brick and mortar stores including Whole Foods and Target.

21.  Defendant Alba is a co-founder of Honest and the public face of the Company.  Defendant Alba appears on the Company's website, which often contains quotes, videos, and other communications from Alba to consumers. Defendant Alba is a citizen of California.

22.  Plaintiffs allege, on information and belief, that at all times herein, Defendants' agents, employees, representatives, executives, directors, partners, and/or subsidiaries were acting within the course and scope of such agency, employment, and representation, on behalf of Defendants.

## FACTUAL ALLEGATIONS

23.  Since the Company's inception in 2011, Honest at all times has marketed and has continued to market its products as SLS-free.

24.  Honest's marketing campaign has been aggressive and continuous, disseminated through all forms of media, including print, television and internet

advertisements and appearances, social media, Company website, multiple third-party websites, and product packaging.

25.  For example, on the label on the back of a bottle of Honest laundry detergent, it states that it is "Honestly FREE of: **SLS**, fragrances, dyes, phosphates, 1,4-dioxane, chlorine, DEA, formaldehyde, petrochemicals, caustics, or optical brighteners." (Emphasis added).  On the label on the back of a bottle of Honest Multi-Surface Cleaner, it states that it is "Honestly FREE of: ammonia, **SLS**, SLSE, fragrances, glycol, dyes, phosphates, 1,4-dioxane, chlorine, bleach, DEA, formaldehyde, triclosan, or caustics." (Emphasis added).

26.  On the "Honestly Free Guarantee" page of its website, Honest maintains a master list of chemicals that the Company has opted NOT to use in its products. The list includes SLS/SLES[1], among others. The Company further claims that it is committed to "providing clear, credible, transparent information. No smoke or mirrors. No confusion."[2]

27.  Defendants market to and play on consumers' fears of harming themselves and their children by emphasizing safety and honesty. Even the Company's name conveys that it emphasizes honesty and transparency in its products.

28.  Founder Alba is a public figure best known for her movie and television appearances. She co-founded Honest in January 2012 and owns 15 to 20 percent of the Company. The Company was named after Alba's oldest daughter, Honor. Alba is the principal endorser of her Company. She promotes Honest and its products on her blog and Twitter, where Alba has more than 9 million followers, and appears in

---

[1]     SLES is Sodium Laureth Sulfate, a closely related chemical to SLS, and one that is a probable carcinogenic ingredient.

[2]     *Honestly FREE Guarantee*, HONEST.COM, http://www.honest.com/about-us/honestly-free-guarantee (last visited Apr. 6, 2016).

many print and online advertisements such as this:



29.  In promoting defendant Alba's book *The Honest Life*, she opens up about the inspiration for creating an all-natural products line:

> As a kid, I was always sick, . . . I had pneumonia, I had really severe allergies.  And it wasn't until I got older, that I realized some of that was caused by toxins in things like detergent.  That made me crazy, because it's supposed to help get things *clean.*[3]

30.  In an interview with Jimmy Fallon, defendant Alba elaborated that she decided to start the Honest Company because "I wanted clean, safe, effective products that were affordable and beautifully designed and I couldn't find them in the marketplace . . . .  There wasn't really a family brand that spoke to me as a young mom."[4]

---

[3]  Faran Krentcil, *Jessica Alba Talks Eco Living and Swapping Shoes*, ELLE (Mar. 12, 2013), http://www.elle.com/fashion/news/a15260/jessica-alba-book-the-honest-life/.

[4]  Kirsten Acuna, *Jessica Alba Went Against Advice Not To Start A Company That Has Since Raised $52 Million,* BUSINESS INSIDER, (Jan. 21, 2014), http://www.businessinsider.com/why-jessica-alba-started-honest-company-2014-1

31. She later reiterated her desire for a "safe" brand, stating she started the Company because she "wanted to create a safe and healthy environment for [her] daughter" and that there were no brands on the market that were "transparent, that used unquestionable safe ingredients, but also was effective."[5]

32. Defendant Alba continues to warn against the dangers of SLS and the importance of avoiding toxic chemicals in her book *The Honest Life*. For example, page 57 of the book warns:

> Remember to check ingredient labels for all of the "Dishonest Ingredients" listed in this chapter (parabens, phthalates, and sodium lauryl sulfate are the top ones to avoid no matter what!)

33. That same page also contains the following warning:



_____

(last visited June 1, 2016).

[5] Moira Forbes, *Jessica Alba On Building Her Billion Dollar Business,* FORBES (July 16, 2015), http://www.forbes.com/sites/moiraforbes/2015/07/16/jessica-alba-on-building-a-billion-dollar-brand/#4d55774546bc.

- 8 -

34.     When discussing Honest products, Alba assures readers that: "Fortunately, my business partner, Christopher Gavigan, is the Honest Company's chief product officer for a reason – he's all about experimenting and finding the cleanest stuff that really works."[6]

35.   On October 15, 2014, Defendants' blog assured consumers that unlike products using harmful ingredients, such as SLS, Honest products do not contain SLS:

> SLS and SLES are both included in our Honestly Free Guarantee which means we'll never use them. We've switched over to sodium coco sulfate (SCS), which is a gentler alternative always derived from coconut.[7]

36.   Honest devoted an entire blog post on the topic of SLS on October 15, 2015, entitled, "What is Sodium Lauryl/Laureth Sulfate?" In the article, it emphasized the toxic quality of SLS while promising that the Company will "never use them."[8] The Company also stated here that it has "switched over to sodium coco sulfate (SCS)." *Id.*

37.   In response to the March 10, 2016 Wall Street Journal article exposing the Company and its SLS usage, Honest published two separate blog posts on the same day attacking the WSJ report as "reckless," while evasively and desperately attempting to differentiate SLS and SCS as two different chemicals, when science clearly points to the contrary.   In one blog post, defendant Alba continued to mislead consumers by stating:

---

[6] *The Honest Life,* at 60.

[7] https://blog.honest.com/what-is-sodium-lauryllaureth-sulfate/# (last visited June 7, 2016).

[8]     *What     is     Sodium     Lauryl/Laureth     Sulfate*?,     HONEST.COM, https://blog.honest.com/what-is-sodium-lauryllaureth-sulfate (last visited June 7, 2016).

As part of the Honestly Free Guarantee, we chose to use Sodium Coco Sulfate (SCS) in our laundry detergent because it's a gentler and less irritating alternative than what's used in many other detergents.  Using SCS in our detergent is just one example of Honest going the extra mile to create safe and effective products that all of us can feel confident about using with our families in our homes.[9]

38.   Claiming SCS is "gentler" than SLS, a "less irritating alternative," and that it is "derived from coconut" is false and misleading. The SCS contained in Honest's products is a blend of sulfates, one of which is SLS. Instead of listing all of the SCS component sulfates in its list of ingredients, Honest identifies SCS as a separate and different chemical than SLS, falsely representing that its products are SLS-free.

39.   Honest's competitors that use SCS in products similar to the Honest products do not claim they are SLS-free.  For example, Seventh Generation uses SCS in its hand washes. On its website, Seventh Generation discloses this fact, along with an explanation that SCS is "very similar" to SLS, and that "SCS contains SLS within it, and then a little more."[10]

**Existence of SLS in Honest's Products**

Honest Laundry Detergent

40.   Honest Laundry Detergent's product packaging and the Honest website state and continue to state that it contains only SCS and that it is SLS-free.

41.   The webpage selling the Laundry Detergent for a retail price of $12.95

---

[9] *What is Sodium Lauryl/Laureth Sulfate?*, HONEST.COM, https://blog.honest.com/a-message-from-our-founder-jessica-alba/# (last visited June 7, 2016).

[10]   *What is Sodium Lauryl Sulfate, And Why Do We Use It?*  SEVENTH GENERATION.COM,   http://www.seventhgeneration.com/product-science/what-sodium-lauryl-sulfate-and-why-do-we-use-it (last visited on April 6, 2016).

- 10 -

contains the "Honestly Free Guarantee," promising that the product is "made without: SLS, synthetic perfume, glycol, enzymes, dyes, phosphates, 1,4-dioxane, chlorine, DEA, formaldehyde, petrochemicals, caustics, or optical brighteners."[11]

42.  This is in direct contradiction to the ingredient list, which discloses the existence of Sodium Coco Sulfate (Coconut-Based Cleanser). By describing SCS as something separate and different from SLS and "Coconut-Based," it creates the false illusion that SCS is a natural and safe ingredient.

43.  It further describes the product as "**Perfect for babies and sensitive skin** – without chemicals residues left behind;" "Non-toxic for you and your family;" and "**Safe • Hypoallergenic**"[12]

44.  By consistently and systematically labeling and marketing the Honest Laundry Detergent as SLS-free, Honest intended that all members of the consuming public purchasing Honest Laundry Detergent would be exposed to those marketing claims.

Honest Dish Soap

45.  Honest Dish Soap's product packaging and the Honest website state and continue to state that it contains only SCS and that it is SLS-free.

46.  The webpage selling the Dish Soap for a retail price or $3.95 contains the "Honestly Free Guarantee," promising that the product is "made without: SLS, SLES, phthalates, synthetic fragrances, glycol, enzymes, dyes, phosphates, 1,4-dioxane, chlorine, DEA, formaldehyde, or caustics."[13]

47.  This is in direct contradiction to the ingredient list, which discloses the existence of Sodium Coco Sulfate (Coconut-Based Cleanser). By describing SCS

---

[11]    *Laundry Detergent*, HONEST.COM, https://www.honest.com/cleaning/honest-laundry-detergent (last visited Apr. 6, 2016).

[12]    *Id.* (emphasis in original).

[13]    *Dish Soap*, HONEST.COM,   https://www.honest.com/cleaning/honest-dish-soap (last visited Apr. 6, 2016).

as something separate and different from SLS and "Coconut-Based," it creates the false illusion that SCS is a natural and safe ingredient.

48.   It further describes the product as having "Coconut-based ingredients," that it does not contain "harsh chemicals (ever!) and that it is **Safe**."[14]

49.   By consistently and systematically labeling and marketing the Honest Dish Soap as SLS-free, Honest intended that all members of the consuming public purchasing Honest Dish Soap would be exposed to those marketing claims.

Honest Multi-Surface Cleaner

50.   Honest Multi-Surface Cleaner product packaging and the Honest website state and continue to state that it contains only SCS and that it is SLS-free.

51.   The webpage selling the Multi-Surface Cleaner for retail price of $5.95 contains the "Honestly Free Guarantee," promising that the product is "made without: ammonia, SLS, SLES, fragrances, glycol, dyes, phosphates, 1,4-dioxane, chlorine, bleach, DEA, formaldehyde, triclosan, or caustics."[15]

52.   This is in direct contradiction to the ingredient list, which discloses the existence of Sodium Coco Sulfate (Coconut-Based Cleanser). By describing SCS as something separate and different from SLS and "Coconut-Based," it creates the false illusion that SCS is a natural and safe ingredient.

53.   It further describes the product as a "**naturally fresh way to safely clean and remove dirt and buildup**"; as having "**no harsh chemicals (ever!)**" and "**[n]o harsh residue**"; "non-toxic for you and your family;" and "**Safe**."[16]

54.   By consistently and systematically labeling and marketing the Honest Multi-Surface Cleaner as SLS-free, Honest intended that all members of the

---

[14]   *Id.*

[15]   *Multi-Surface Cleaner*, HONEST.COM, https://www.honest.com/ cleaning/honest-surface-cleaner (last visited Apr. 6, 2016).

[16]   *Id.* (emphasis in original).

consuming public purchasing Honest Multi-Surface Cleaner would be exposed to those marketing claims.

**CLASS ACTION ALLEGATIONS**

55.   Plaintiffs bring this action as a class action pursuant to Rule 23(a) and (b)(2) and/or (b)(3) of the Federal Rules of Civil Procedure ("Rule") for the purpose of asserting the claims alleged in this Complaint on a common basis. Plaintiffs bring this action on behalf of themselves and all members of the following class comprised of:

> All persons, exclusive of Defendants and its employees, who purchased in the United States, Honest Laundry Detergent, Honest Dish Soap, and/or Honest Multi-Surface Cleaner for personal use and not for resale (the "Nationwide Class").[17]

56.   Plaintiff Sanchez brings this action on behalf of herself and all members of the following subclass comprised of:

> All persons, exclusive of Defendants and its employees, who purchased in California, Honest Laundry Detergent, Honest Dish Soap, and/or Honest Multi-Surface Cleaner for personal use and not for resale (the "California Subclass").

57.   Plaintiff Woodard brings this action on behalf of herself and all members of the following subclass comprised of:

> All persons, exclusive of Defendants and its employees, who purchased in Illinois, Honest Laundry Detergent, Honest Dish Soap, and/or Honest Multi-Surface Cleaner for personal use and not for resale (the "Illinois Subclass") (The Nationwide Class, California Subclass and Illinois Subclass are collectively called the "Class").

---

[17]   Plaintiffs reserve the right to redefine the Class prior to class certification.

58. ***Numerosity.   Rule 23(a)(1).***   The members of the Class are so numerous that their individual joinder is impracticable.  Plaintiffs are informed and believe that the proposed Class contains at least thousands of purchasers of Defendants' products who have been damaged by Defendants' conduct as alleged herein.   The number of Class members is unknown to Plaintiffs but can be determined through discovery, including through the distribution records of Defendants and third party retainers and vendors. Many Class members purchase products or bundles subscriptions directly from the Honest website and, therefore, Defendants are in the possession of records of the identities of purchasers.

59. ***Existence of Common Questions of Law and Fact.   Rule 23(a)(2).*** This action involves common questions of law and fact, which include, but are not limited to, the following:

       a.    Whether the statements made by Defendants as part of their advertising for Defendants' products discussed herein are true, or are reasonably likely to deceive, given the misrepresentations and omissions of material fact described above;

       b.    Whether Defendants' conduct described herein constitutes a deceptive act or practice in violation of the CLRA;

       c.    Whether Defendants' conduct described herein constitutes an unlawful, unfair, and/or fraudulent business practice in violation of the UCL;

       d.    Whether Defendants' conduct described herein constitutes unfair, deceptive, untrue or misleading advertising in violation of the FAL;

       e.    Whether Defendants' conduct constitutes a breach of express warranty;

       f.    Whether Defendants' conduct constitutes unjust enrichment;

       g.    Whether Plaintiffs and the other members of the Class are

1    entitled to damages; and

2         h.    Whether Plaintiffs and the Class are entitled to injunctive relief,

3                restitution or other equitable relief and/or other relief as may be

4                proper.

5    60.  ***Typicality.  Rule 23(a)(3).***  All members of the Class have been subject

6    to and affected by the same conduct and omissions by Defendants.  The claims

7    alleged herein are based on the same violations by Defendants that harmed

8    Plaintiffs and members of the Class.  By purchasing Honest products during the

9    relevant time period, all members of the Class were subjected to the same wrongful

10   conduct.  Plaintiffs' claims are typical of the Class' claims and do not conflict with

11   the interests of any other members of the Class.  Defendants' unlawful, unfair,

12   deceptive, and/or fraudulent actions and breaches of warranty concern the same

13   business practices described herein, irrespective of where they occurred or were

14   experienced.

15   61.  ***Adequacy.  Rule 23(a)(4).***  Plaintiffs will fairly and adequately protect

16   the interests of the members of the Class.  Plaintiffs have retained counsel

17   experienced in complex consumer class action litigation, and Plaintiffs intend to

18   prosecute this action vigorously.   Plaintiffs have no adverse or antagonistic

19   interests to those of the Class.

20   62.  ***Injunctive and Declaratory Relief.  Rule 23(b)(2).***  Defendants' actions

21   regarding the misrepresentations, deceptions and omissions regarding Honest

22   products are uniform as to members of the Class.  Defendants have acted or

23   refused to act on grounds that apply generally to the Class, so that final injunctive

24   relief as requested herein is appropriate respecting the Class as a whole.

25   63.  ***Predominance and Superiority of Class Action.   Rule 23(b)(3).***

26   Questions of law or fact common to the Class predominate over any questions

27   affecting only individual members, and a class action is superior to other methods

28   for the fast and efficient adjudication of this controversy, for at least the following

- 15 -

reasons:

      a.    Absent a class action, members of the Class as a practical matter will be unable to obtain redress, Defendants' violations of their legal obligations will continue without remedy, additional consumers will be harmed, and Defendants will continue to retain their ill-gotten gains;

      b.    It would be a substantial hardship for most individual members of the Class if they were forced to prosecute individual actions;

      c.    When the liability of Defendants has been adjudicated, the Court will be able to determine the claims of all members of the Class;

      d.    A class action will permit an orderly and expeditious administration of the claims of each member of the Class and foster economies of time, effort, and expense;

      e.    A class action regarding the issues in this case does not create any problems of manageability; and

      f.    Defendants have acted on grounds generally applicable to the members of the Class, making class-wide monetary relief appropriate.

64.  Plaintiffs do not contemplate class notice if the Class is certified under Rule 23(b)(2), which does not require notice, and notice to the putative Class may be accomplished through publication, signs or placards at the point-of-sale, or other forms of distribution if necessary if the Class is certified under Rule 23(b)(3), or if the Court otherwise determines class notice is required.  Plaintiffs will, if notice is so required, confer with Defendants and seek to present the Court with a stipulation and proposed order on the details of a class notice program.

///

///

**COUNT I**

**Violations of the Consumers Legal Remedies Act**

**(Cal. Civil Code §§ 1750, *et seq.*)**

**(On Behalf of Plaintiff Sanchez and the California Subclass)**

65.   Plaintiff Sanchez repeats and realleges the allegations contained in the paragraphs above, as if fully set forth herein.

66.   This cause of action is brought pursuant to the Consumers Legal Remedies Act, California Civil Code §§ 1750, *et seq.* (the "CLRA"), which provides that enumerated listed "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful," Cal. Civ. Code § 1770, and that "[a]ny consumer who suffers any damage as a result of the use or employment by any person of a method, act, or practice declared to be unlawful by Section 1770 may bring an action against that person to recover or obtain," various forms of relief, including an injunction and damages.  Cal. Civ. Code § 1780.

67.     On April 27, 2016, prior to the filing of this Complaint, Plaintiff Sanchez sent Defendants a CLRA notice letter providing the notice required by California Civil Code section 1782(a).  Plaintiff Sanchez sent the letter via certified mail, return receipt requested, to Defendants' principal place of business in Playa Vista, California advising Honest and Alba that they are in violation of the CLRA and breach of express warranty and must correct, replace or otherwise rectify the goods and/or services alleged to be in violation of section 1770.  Defendants were further advised that in the event the relief requested was not provided within thirty (30) days, Plaintiff Sanchez would include a request for monetary damages pursuant to the CLRA.  A true and correct copy of Plaintiff Sanchez's letter is attached hereto as Exhibit A. Thus, pursuant to California Civil Code section 1782, Plaintiff Sanchez brings this claim for damages due to the passing of the statutory

- 17 -

notice period.

68.   Plaintiff Sanchez was deceived by Defendants' unlawful practices as described more fully above, which included carrying out an advertising campaign, directed at Plaintiff Sanchez and the California Subclass, conveying the message that Defendants' products are free of SLS and variations of that statement.   This advertising campaign was deceptive, false and misleading given the ingredients and characteristics of Defendants' products which were known or should have been known to Defendants, as explained in detail herein above.

69.   Defendants' actions, representations and conduct have violated, and continue to violate, the CLRA because they extend to transactions that are intended to result, or which have resulted, in the sale of goods to consumers.

70.   Defendants marketed, sold and distributed their products in California and throughout the United States during the relevant period.

71.   Plaintiff Sanchez and members of the California Subclass are "consumers" as that term is defined by the CLRA in California Civil Code section 1761(d).

72.   Defendants' products were and are "good[s]" within the meaning of California Civil Code section 1761(a) & (b).

73.   Defendants violated the CLRA by engaging in at least the following practices proscribed by California Civil Code section 1770(a) in transactions with Plaintiff Sanchez and the California Subclass which were intended to result in, and did result in, the sale of Defendants' products:

(5) Representing that [Honest products] have . . . approval, characteristics . . . uses [or] benefits . . . which they do not have . . . .

***

(7) Representing that [Honest products] are of a particular standard, quality or grade . . . if they are of another.

***

(9) Advertising goods . . . with intent not to sell them as advertised.

74.     As such, Defendants' conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices because they do not sell, and because they intend not to sell, the products as advertised and instead misrepresent the particulars by, in their marketing, representing their products as described above when they knew, or should have known, that the representations and advertisements were deceptive, false and misleading in light of the omissions of material facts as described above.

75.     The omitted information would have been material to a reasonable customer in his or her decision as to whether to purchase Defendants' products and/or purchase Defendants' products at the price at which they were offered.

76.     Defendants had a duty to disclose this information to Plaintiff Sanchez and the members of the California Subclass for several reasons.  First, Defendants repeatedly made the representation that their products are free of SLS.  Second, Defendants were in a position to know of the omitted information, both from their own product knowledge and creation decisions, while consumers were not reasonably in a position to be aware of Defendants' internal product information. Third, Defendants actively failed to disclose these material facts to, or actively concealed these material facts from, Plaintiff Sanchez and the California Class. Finally, while Defendants made representations about the nature and characteristics of Honest products, stating that its products contain SCS instead of SLS, those representations were misleading half-truths because they implied that Honest products contain only SCS and are SLS-free, when, in fact, they contain SLS.

77.     Defendants provided Plaintiff Sanchez and the other California Subclass members with products that did not match the quality portrayed by their marketing.

78.     If Defendants had disclosed the information discussed above about its

products and otherwise been truthful about their contents, Plaintiff Sanchez would not have paid as much for Defendants' products or would not have purchased Defendants' products.  Defendants were also able to charge more than what Honest products would have been worth had they disclosed the truth about them.

79.    As a result, Plaintiff Sanchez and members of the California Subclass have suffered irreparable harm.  The injuries of Plaintiff Sanchez and the other California Subclass members' injuries were proximately caused by Defendants' conduct as alleged herein.   Plaintiff Sanchez, individually and on behalf of all other California Subclass members, seeks entry of an order enjoining Defendants from continuing to employ the unlawful methods, acts and practices alleged herein pursuant to California Civil Code section 1780(a)(2), and ordering the payment of costs and attorneys' fees, and such other relief as deemed appropriate and proper by the Court under California Civil Code section 1780(a)(2).  If Defendants are not restrained from engaging in these practices in the future, Plaintiff Sanchez and the California Subclass will continue to suffer harm.

80.    Pursuant to section 1780(d) of the CLRA, attached hereto as Exhibit B is an affidavit showing that this action has been commenced in the proper forum.

## COUNT II

### Violations of the Unfair Competition Law

### (Cal. Bus. & Prof. Code §§ 17200, *et seq.*)

### (On Behalf of Plaintiff Sanchez and the California Subclass)

81.    Plaintiff Sanchez repeats and realleges the allegations contained in the paragraphs above, as if fully set forth herein.

82.    The Unfair Competition Law, Cal. Business & Professions Code §§ 17200, *et seq.* ("UCL"), prohibits any "unlawful," "unfair," or fraudulent business act or practice and any false or misleading advertising.

83.    In the course of conducting business, Defendants committed unlawful business practices by, *inter alia*, making the representations (which also constitute

advertising within the meaning of section 17200) and omissions of material facts, as set forth more fully herein, and violating California Civil Code sections 1750, *et seq.*, and the common law.

84.     Plaintiff Sanchez, individually and on behalf of other California Subclass members, reserves the right to allege other violations of law which constitute other unlawful business acts or practices.  Such conduct is ongoing and continues to this date.

85.     Defendants' actions constitute "unfair" business acts or practices because, as alleged above, *inter alia*, Defendants engage in deceptive and false advertising, and misrepresent and omit material facts regarding their products, and thereby offend an established public policy, and engage in immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.  This conduct constitutes violations of the unfair prong of Business & Professions Code sections 17200, *et seq.*

86.     Business & Professions Code sections 17200, *et seq.*, also prohibits any "fraudulent business act or practice."

87.     Defendants' actions, claims, nondisclosures, and misleading statements, as alleged in this Complaint, also constitute "fraudulent" business practices in violation of the UCL because, among other things, they are false, misleading, and/or likely to deceive reasonable consumers within the meaning of Business & Professions Code sections 17200, *et seq.*

88.     There were reasonably available alternatives to further Defendants' legitimate business interests, other than the conduct described herein.

89.      As a result of Defendants' pervasive false marketing, including deceptive and misleading acts and omissions as detailed in this Complaint, Plaintiff Sanchez and other members of the California Subclass have in fact been harmed as described above.  If Defendants had disclosed the information discussed above about their products and otherwise been truthful about their contents, Plaintiff

1   Sanchez would not have paid as much for Defendants' products or would not have
2   purchased Defendants' products.  Defendants were also able to charge more than
3   what their products would have been worth had they disclosed the truth about
4   them.

5          90.    As a result of Defendants' unlawful, unfair, and fraudulent practices,
6   Plaintiff Sanchez and the other California Subclass members have suffered injury
7   in fact and lost money.

8          91.    Unless restrained and enjoined, Defendants will continue to engage in
9   the above-described conduct.  Accordingly, injunctive relief is appropriate for
10  Plaintiff Sanchez and the California Subclass.

11         92.    As a result of Defendants' conduct in violation of the UCL, Plaintiff
12  Sanchez and members of the California Subclass have been injured as alleged
13  herein in amounts to be proven at trial because they purchased Defendants'
14  products without full disclosure of the material facts discussed above.

15         93.    As a result, Plaintiff Sanchez individually, and on behalf of the
16  California Subclass and the general public, seeks restitution of all money obtained
17  from Plaintiff Sanchez and the other members of the California Subclass collected
18  by Defendants as a result of their unlawful, unfair, and/or fraudulent conduct, and
19  seek injunctive relief, and all other relief this Court deems appropriate, consistent
20  with Business and Professions Code section 17203.

21         94.    Plaintiff Sanchez is also suing on behalf of the general public as
22  defined in Business and Professions Code section 17204 in order to enjoin and
23  remedy the ongoing unlawful, unfair, and fraudulent business practices alleged
24  herein and to obtain declaratory, injunctive, and other appropriate relief on behalf
25  of all those members of the general public who have been victimized by
26  Defendants' actions.

27  ///
28  ///

**COUNT III**

**Violations of the False Advertising Law**

**(Cal. Bus. & Prof. Code §§ 17500 *et seq.*)**

**(On Behalf of Plaintiff Sanchez and the California Subclass)**

95.     Plaintiff Sanchez repeats and realleges the allegations contained in the paragraphs above, as if fully set forth herein.

96.     Plaintiff Sanchez has standing to pursue this claim as Plaintiff Sanchez suffered injury in fact as a result of Defendants' actions as set forth herein. Specifically, prior to the filing of this action, Plaintiff Sanchez purchased Defendants' products in reliance upon Defendants' marketing claims.   Plaintiff Sanchez used Defendants' products believing that the products were of a higher quality and safer to use than as advertised.

97.     Defendants' business practices as alleged herein constitute unfair, deceptive, untrue, and misleading advertising pursuant to California Business and Professions Code sections 17500, *et seq.*, because Defendants have advertised their products in a manner that is untrue and misleading, or that Defendants knew was untrue or misleading, or omitted material information from their advertising which Defendants had a duty to disclose.

98.     Defendants' wrongful business practices have caused injury to Plaintiff Sanchez and the California Subclass, in the form of the lost purchase price of the products. Plaintiff Sanchez and the California Subclass purchased the products after being exposed to Defendants' false or deceptive advertising claims, as described herein.

99.     Defendants' conduct caused and continues to cause substantial injury to Plaintiff Sanchez and the other members of the California Subclass. Plaintiff Sanchez and the California Subclass continue to be exposed to Defendants' false and/or misleading advertising every time they shop and encounter Defendants' false or deceptive advertising on store shelves or on the internet. Pursuant to

section 17535 of the California Business and Professions Code, Plaintiff Sanchez and the California Subclass seek an order of this Court enjoining Defendants from continuing to engage in deceptive business practices, false advertising, and any other act prohibited by law, including those set forth in this Complaint.

100.   Plaintiff Sanchez and the California Subclass also seek an order for the restitution of all monies from the sale of Defendants' products containing SLS, which were unjustly acquired through acts of unlawful, unfair, and/or fraudulent competition.

## COUNT IV
### Violation of the Illinois Consumer Fraud and
### Deceptive Business Practices Act
### (815 ILCS 505/1 *et seq.*)
### (On Behalf of Plaintiff Woodard and the Illinois Subclass)

101.   Plaintiff Woodard repeats and realleges the allegations contained in the paragraphs above, as if fully set forth herein.

102.   This cause of action is brought pursuant to the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.* (the "ILCS"), which prohibits deceptive acts or practices committed in the court of trade or commerce and with the intent that others rely upon them. 815 ILCS 505/2.

103.   Section 2 provides, in full: "Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the 'Uniform Deceptive Trade Practices Act,' approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.   In construing this section,

consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a) of the Federal Trade Commission Act." 815 ILCS 505/2.

104.   Section 2 of the Uniform Deceptive Trade Practices Act states in relevant part that: "A person engages in a deceptive trade practice when, in the course of his or her business, vocation, or occupation, the person ... represents that goods or services have . . . characteristics, . . . uses, [or] benefits . . . that they do not have . . . ." 815 ILCS 510/2(a)(5).

105.   Plaintiff Woodard and the Illinois Subclass reserve the right to allege other violations of law, which constitute other unlawful business acts or practices. Such conduct is ongoing and continues to this date.

106.   The above-described unfair or deceptive acts or practices occurred in the court of conduct involving trade or commerce, namely, the sale of goods to Plaintiff Woodard and the Illinois Subclass.

107. Defendants' practice of unlawfully engaging in the activity described above also constitutes "unfair" business acts or practices because, *inter alia*, Defendants engaged in false advertising conveying the message that Defendants' products are free of SLS and variations of that statement.   This advertising campaign was deceptive, false and misleading given the ingredients and characteristics of Defendants' products.

108.   Defendants' business acts or practices therefore offend an established public policy, and Defendants engage in immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers, as alleged in detail *supra*, and therefore Defendants' actions are unfair or deceptive acts or practices prohibited by Chapter 2 of the ICFA.  815 ILCS 505/2.

109.   Defendants intended that Plaintiff Woodard and the Illinois Subclass would rely on their deceptive acts or practices described *supra*.  Defendants' intent is evidenced by their actions, claims, nondisclosures, and misleading statements as

alleged in this Complaint that were false, misleading, and likely to deceive the consuming public, *inter alia*, their knowledge that their material misrepresentations or omissions were unlawful in Illinois and their continuation of such activity in the face of such knowledge while omitting to disclose or notify Plaintiff Woodard and the Illinois Subclass that their claims were false.

110.   Plaintiff Woodard has in fact been deceived as a result of her reliance on Defendants' material misrepresentations and omissions described above.

111.   Defendants' material misrepresentations and omissions described about have caused harm to Plaintiff Woodard and members of the Illinois Subclass who each purchased Defendants' products.  Plaintiff Woodard and other Illinois Subclass members have suffered injury in fact and lost money as a result of these unlawful, unfair and fraudulent practices.

112.   On May 9, 2016, prior to the filing of this Complaint, Plaintiff Woodard sent Defendants a letter to Honest and Alba alleging that the Defendants violated and continue to violate the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.*  Plaintiff Woodard sent the letter via certified mail, return receipt requested, to Defendants' principal place of business in Playa Vista, California advising Honest and Alba that they are in violation of the ILCS and breach of express warranty and must correct, replace or otherwise rectify the goods and/or services alleged to be in violation of the ILCS. A true and correct copy of Plaintiff Sanchez's letter is attached hereto as Exhibit A.

## COUNT V

### Breach of Express Warranty

### (On Behalf of Plaintiffs and the Class)

113.   Plaintiffs repeat and reallege the allegations contained in the paragraphs above, as if fully set forth herein.

114.   Plaintiffs bring this claim individually and on behalf of the Class.

115.   Plaintiffs, and each member of the Class, formed a contract with

Defendants at the time Plaintiffs and the other members of the Class purchased Defendants' products.   The terms of that contract include the promises and affirmations of fact made by Defendants on their product packaging and inserts and through the Honest marketing campaign, as described above.   This product packaging and advertising constitute express warranties, became part of the basis of the bargain, and are part of a standardized contract between Plaintiffs and the members of the Class on the one hand, and Defendants on the other.

116.   Plaintiffs and the Class members performed their obligations under the contract.

117.   Defendants breached the terms of this contract, including the express warranties, with Plaintiffs and the Class by not providing products free of SLS and otherwise omitted material information about the nature of the product.   Such express warranties breached by Defendants include the representations set forth herein.

118.   As a result of Defendants' breach of its contract, Plaintiffs and the Class have been damaged in the amount of the purchase price of the Honest products they purchased.

119.   Plaintiff Sanchez's notice letter sent on April 27, 2016, via certified mail to Defendants' principal place of business in Playa Vista, California advised Honest and Alba that they are in breach of express warranty and must correct, replace or otherwise rectify the goods and/or services.   A true and correct copy of Plaintiff Sanchez's letter is attached hereto as Exhibit A.

120.   Plaintiff Woodard's notice letter sent on May 9, 2016, via certified mail to Defendants' principal place of business in Playa Vista, California advised Honest and Alba that they are in breach of express warranty and must correct, replace or otherwise rectify the goods and/or services.   A true and correct copy of Plaintiff Woodard's letter is attached hereto as Exhibit A.

## COUNT VI

### Unjust Enrichment

### (On Behalf of Plaintiffs and the Class)

121. Plaintiffs repeat and reallege the allegations contained in the paragraphs above, as if fully set forth herein.

122. Plaintiffs bring this claim individually and on behalf of the Class.

123. Defendants, through their false and deceptive advertising claims, enticed Plaintiffs and members of the Class to purchase their Honest Laundry Detergent, Honest Dish Soap, and Honest Multi-Surface Cleaner.

124. Plaintiffs and members of the Class conferred a benefit on Defendants by purchasing their Honest Laundry Detergent, Honest Dish Soap, and Honest Multi-Surface Cleaner.

125. By their wrongful acts, Defendants have been unjustly enriched at the expense of, and to the detriment of, Plaintiffs and members of the Class. Defendants benefitted financially from the revenues and other compensation tied to the sale of their Honest Laundry Detergent, Honest Dish Soap, and Honest Multi-Surface Cleaner.

126. Under the circumstances, it would be against equity and good conscience to permit Defendants to retain the ill-gotten benefits they received from Plaintiffs and the Class as the result of their deceptive marketing and advertising practices.

127. Because Defendants' retention of the non-gratuitous benefit conferred on them by Plaintiffs and the Class members is unjust and inequitable, Plaintiffs seek restitution from Defendants and an order from the Court disgorging all profits, benefits, and other compensation obtained by Defendants due to their wrongful conduct.

///

///

## **PRAYER FOR RELIEF**

Wherefore, Plaintiffs, on behalf of themselves, all others similarly situated, and the general public, pray for a judgment:

a.    Certifying the Class and the California Subclass and Illinois Subclass as requested herein, and appointing Plaintiffs as class representatives for the Class and the respective Subclasses they seek to represent;

b.    Requiring Defendants to disgorge or return all monies, revenues and profits obtained by means of any wrongful act or practice to Plaintiffs and the members of the Class under each cause of action where such relief is permitted;

c.    Enjoining Defendants from continuing the unlawful practices as set forth herein, including marketing or selling its products without disclosing the existence of SLS, and directing Defendants to engage in corrective action, or providing other injunctive or equitable relief;

d.    Awarding damages for breach of express warranty; and all other claims where permitted

e.    Awarding all equitable remedies available pursuant to California Civil Code section 1780 and other applicable law;

f.    Awarding attorneys' fees and costs;

g.    Awarding pre-judgment and post-judgment interest at the legal rate; and

h.    Providing such further relief as may be just and proper.

///
///
///
///
///
///

1

## **DEMAND FOR JURY TRIAL**

2

Plaintiffs hereby demand a trial by jury on all issues so triable.

3

DATED:  June 10, 2016

4

**WOLF HALDENSTEIN ADLER
    FREEMAN & HERZ LLP**

By:      */s/ Betsy C. Manifold*

5

BETSY C. MANIFOLD

6

7

BETSY C. MANIFOLD
manifold@whafh.com

8

RACHELE R. RICKERT
rickert@whafh.com
BRITTANY N. DEJONG

9

dejong@whafh.com
750 B Street, Suite 2770

10

San Diego, CA 92101
Telephone:  619/239-4599

11

Facsimile:   619/234-4599

12

**WOLF HALDENSTEIN ADLER
    FREEMAN & HERZ LLP**

13

JANINE L. POLLACK
pollack@whafh.com

14

Gloria Kui Melwani
melwani@whafh.com

15

270 Madison Avenue
New York, New York 10016

16

Telephone:  212/545-4600
Facsimile:   212/545-4653

17

18

**LEVI & KORSINSKY, LLP**
NANCY A. KULESA

19

nkulesa@zlk.com
STEPHANIE A. BARTONE

20

sbartone@zlk.com
733 Summer Street, Suite 304

21

Stamford, CT 06901

22

**LEVI & KORSINSKY, LLP**
LORI G. FELDMAN

23

lfeldman@zlk.com
ANDREA CLISURA

24

aclisura@zlk.com
30 Broad Street, 24th Floor

25

New York, New York 10004
Telephone: 212/363-7500

26

Facsimile: 212/363-7171

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**MCLAUGHLIN & STERN LLP**
LEE S. SHALOV
lshalov@mclaughlinstern.com
260 Madison Avenue
New York, New York 10016
Telephone:   646/278-4298
Facsimile:    212/448/0066

**ACCESS LAWYERS GROUP**
C. MARIO JARAMILLO
cmj@accesslg.com
251 South Lake Avenue, Suite 920
Pasadena, California 91101
Telephone: 866/643-9099
Facsimile: 866/686-5590

*Counsel for Plaintiffs and the Class*

HONEST 22979